# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVON E. McCOY, | CASE NO. 1:07-cv-00198-AWI-NEW (DLB) PC |
| Plaintiff, | ORDER REQUIRING PLAINTIFF TO EITHER FILE AMENDED COMPLAINT OR NOTIFY COURT OF WILLINGNESS TO PROCEED ON CLAIMS FOUND TO BE COGNIZABLE BY THE COURT |
| v. | |
| R. SPIDLE, et al., | |
| Defendants. | (Doc. 1) |

I.  Screening Order

    A.  Screening Requirement

Plaintiff Davon E. McCoy ("plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed this action on February 6, 2007. The events at issue in this action allegedly occurred at High Desert State Prison and California State Prison-Corcoran (CSP-Corcoran). Plaintiff is seeking money damages and declaratory relief for the violation of his constitutional rights to due process, to be free from retaliation, and to medical care.

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall

dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002); Fed. R. Civ. P. 8(a). Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512. A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Id. at 514. "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.'" Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); see also Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004) ("'Pleadings need suffice only to put the opposing party on notice of the claim . . . .'" (quoting Fontana v. Haskin, 262 F.3d 871, 977 (9th Cir. 2001))). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitze v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

      B.    Plaintiff's Claims

          1.    Due Process Claims

While at High Desert State Prison, plaintiff was issued a Rules Violation Report for conspiracy to murder peace officers on May 2, 2005, and retained in administrative segregation pending a disciplinary hearing. Defendant Spidle was assigned as an investigative employee, but failed collect from plaintiff the written questions plaintiff wanted asked of plaintiff's requested witnesses, who were inmates and C-5 officers. Defendant Spidle then erroneously documented

that plaintiff wanted C-3 officers called as character witnesses. On June 15, 2005, plaintiff's disciplinary hearing was conducted by defendant Perry, with participation by defendant Doyle, despite plaintiff's complaints that the investigative employee's report was incomplete and defendant Spidle had not collected his witness questions. Defendants Perry and Doyle also denied plaintiff's request for witnesses, made at the hearing, without explanation and later reported that plaintiff did not ask for any witnesses. Plaintiff was found guilty and assessed a credit forfeiture of one-hundred eighty days.

On July 7, 2005, due to discrepancies in the confidential reports used to find plaintiff guilty, Chief Deputy Warden R. K. Wong ordered Institutional Classification Committee members defendants Dreith and Does 1 through 3 to reissue and rehear the Rules Violation Report. Defendants Dreith and Does 1 through 3 disregarded the order and on July 21, 2005, assessed plaintiff a forty-eight month Security Housing Unit term in absentia. Plaintiff was transferred to CSP-Corcoran to serve his SHU term.

On July 17, 2005, plaintiff filed an inmate appeal challenging the finding of guilt against him. On September 6, 2005, plaintiff filed another inmate appeal against defendant Dangler for mishandling plaintiff's prior appeal. On January 26, 2006, plaintiff's appeal of his disciplinary hearing was granted and the charge against him for conspiracy to murder peace officers was dismissed. On April 12, 2006, plaintiff's SHU term was vacated and he was released to general population. On April 27, 2006, defendant Dangler, in retaliation against plaintiff for filing an appeal against him, issued a memorandum reassessing the forty-eight month SHU term.

On June 15, 2006, plaintiff appeared before ICC members defendants Watson, Stockman, Buckley, Garza, Allen, and Samaya for review and approval of defendant Dangler's reassessment of the SHU term. Plaintiff asserted that he had been denied due process because he had not been issued a Rules Violation Report, had not been found guilty of any offense, and had not been allowed to collect evidence or present witnesses. Nevertheless, defendants Watson, Stockman, Buckley, Garza, Allen, and Samaya approved the assessment of a forty-eight month SHU term.

The Due Process Clause protects against the deprivation of liberty without due process of law. <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974). In order to invoke the protection of the

1  Due Process Clause, a plaintiff must first establish the existence of a liberty interest for which the
2  protection is sought.  Liberty interests may arise from the Due Process Clause itself or from state
3  law.  Wilkinson v. Austin, 125 S.Ct. 2384, 2393 (2005).  The Due Process Clause itself does not
4  confer on inmates a liberty interest in avoiding "more adverse conditions of confinement."
5  Wilkinson, 125 S.Ct. at 2393; Hewitt v. Helms, 459 U.S. 460, 466-68 (1983).  Under state law,
6  the existence of a liberty interest created by prison regulations is determined by focusing on the
7  nature of the deprivation.  Sandin v. Conner, 515 U.S. 472, 481-84 (1995).  Liberty interests
8  created by state law are "generally limited to freedom from restraint which . . . imposes atypical
9  and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin
10 v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300 (1995); Myron v. Terhune, 476 F.3d 716,
11 718 (9th Cir. 2007).  Plaintiff has alleged sufficient facts in his complaint to demonstrate that the
12 conditions in the SHU differed from general population differed to the extent that plaintiff has a
13 protected liberty interest in remaining free from the SHU.  (Comp., ¶¶33, 34.)

14        However, where "success in a . . . [section] 1983 damages action would implicitly
15 question the validity of conviction or duration of sentence, the litigant must first achieve
16 favorable termination of his available state, or federal habeas, opportunities to challenge the
17 underlying conviction or sentence."  Muhammad v. Close, 540 U.S. 749, 751, 124 S.Ct. 1303,
18 1304 (2004) (citing to Heck v. Humphrey, 512 U.S. 477 (1994)); Wilkinson v. Dotson, 544 U.S.
19 74, 81-2, 125 S.Ct. 1242, 1248 (2005); Edwards v. Balisok, 520 U.S. 641, 648 (1997).  Thus,
20 where the punishment imposed at a disciplinary hearing results in the loss of time credits, thereby
21 affecting the duration of a prisoners's sentence, any claims arising from the disciplinary hearing
22 are barred until such time as the prisoner invalidates the result of the disciplinary hearing.  In this
23 instance, plaintiff was initially assessed a credit forfeiture, which would bar his due process
24 claims and his retaliation claim, discussed below.  However, construing the allegations in the
25 light most favorable to plaintiff, it appears that when the charge against him was dismissed, the
26 assessment of both the credit forfeiture and the SHU term were rescinded, and the habeas
27 termination rule does not apply to bar these claims.
28 ///

Turning to what procedure is due, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff, 418 U.S. at 556.  With respect to prison disciplinary proceedings, the minimum procedural requirements that must be met are:  (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. Id. at 563-71.  As long as the five minimum Wolff requirements are met, due process has been satisfied. Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994).

Plaintiff has alleged sufficient facts to support a claim that defendants Spidle, Perry, Doyle, Dreith, Does 1 through 3, Dangler, Watson, Stockman, Buckley, Garza, Allen, and Samaya deprived him of his protected liberty interest in remaining free from the SHU without procedural due process.

### 2. Retaliation Claim

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).  An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support claim under section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).

Plaintiff's allegation that defendant Dangler reassessed the forty-eight month SHU term in retaliation against plaintiff for filing an inmate appeal against him is sufficient to state a claim for relief under section 1983.

### 3. Denial of Medical Care

Plaintiff alleges that on July 5, 2006, while in the CSP-Corcoran SHU, he felt he was about to have a seizure, and alerted defendants Tomlin and Kee and asked them to summon medical staff. Defendants ignored plaintiff and walked away. Several minutes later, plaintiff yelled through his door at defendant Garcia to have defendants McNamara, Tomlin, Kee, and Rubacalaba summon medical attention because he was about to have a seizure. Defendant Garcia ignored plaintiff. Other prisoners then began to yell that there was a man down in cell 27 due to a medical emergency, but defendants Garcia, McNamara, Tomlin, Kee, and Rubacalaba ignored them. Plaintiff thereafter suffered a seizure which rendered him unconscious. Plaintiff injured his foot, head, and shoulder when he fell to the ground. When plaintiff regained consciousness, other prisoners were yelling there was a man down. However, defendants McNamara, Tomlin, Kee, and Rubacalaba ignored them and went home when their shift ended without responding. In response, the other prisoners "boarded up," a process which forces staff response due to the covering of cell windows and doors. (Comp., ¶58.)

After approximately thirty minutes, defendant Madrigal finally responded to the prisoners' act of boarding up and learned the reason behind it. Defendant Madrigal saw plaintiff's injuries, and alerted medical staff. Defendant Poblete, a medical technical assistant, arrived and examined plaintiff through the food port in the cell door. Defendant Poblete documented that plaintiff sustained an injured foot, a bitten tongue, a hurt cranium, and a dislocated shoulder from a seizure. Plaintiff alleges that a bone was sticking out of his shoulder, and he told defendant Poblete he was in severe pain and needed a doctor. Defendant Poblete left to consult with his supervisor, defendant Reyes, a registered nurse. When defendant Poblete returned, he reported that defendant Reyes said plaintiff would not receive medical treatment unless he was dying and would be put on the sick call list for the next day.

///

Between June 6, 2006, and June 9, 2006, plaintiff notified defendants Renoso, Gonzales, Compos, and Morales he was injured and in pain, but they did nothing.  On June 9, 2006, plaintiff was summoned to the medical clinic regarding an unrelated issue and was examined by Dr. Rohor.  Dr. Rohor ordered that plaintiff be taken to the ER immediately when he saw the bone sticking out of plaintiff's shoulder.  Once there, plaintiff received an x-ray by Dr. Sanchez and was admitted for surgery for a torn rotator cuff.

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  A prisoner's claim of inadequate medical care does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'" Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)).  A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 834 (1994).  Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment," or in the manner "in which prison physicians provide medical care." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate  indifference to serious medical needs. McGuckin, 974 F.2d at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

Plaintiff's allegations are sufficient to support a claim for relief under section 1983 against defendants Garcia, McNamara, Tomlin, Kee, Rubacalaba, Poblete, Reyes, Renoso, Gonzales, Compos, and Morales for acting with deliberate indifference to plaintiff's serious medical needs, in violation of the Eighth Amendment.  Fed. R. Civ. P. 8(a).  However, plaintiff's allegations to not give rise to a claim for relief against defendant Madrigal.  Defendant Madrigal

summoned medical care for plaintiff when he saw plaintiff's injuries. There are no allegations to support a claim that defendant Madrigal "[knew] of and disregard[ed] an excessive risk to [plaintiff's] health or safety." Farmer, 511 U.S. at 837.

### C.   Conclusion

Plaintiff's complaint states cognizable claims for relief against defendants Spidle, Perry, Doyle, Dreith, Does 1 through 3, Dangler, Watson, Stockman, Buckley, Garza, Allen, and Samaya for denial of due process, against defendant Dangler for retaliation, and against defendants Garcia, McNamara, Tomlin, Kee, Rubacalaba, Poblete, Reyes, Renoso, Gonzales, Compos, and Morales for acting with deliberate indifference to plaintiff's serious medical needs. However, plaintiff's complaint does not state a cognizable claim for relief against defendant Madrigal for acting with deliberate indifference to plaintiff's serious medical needs. The court will provide plaintiff with the opportunity to file an amended complaint, if plaintiff wishes to do so.

If plaintiff does not wish to file an amended complaint and is agreeable to proceeding only against defendants Spidle, Perry, Doyle, Dreith, Does 1 through 3, Dangler, Watson, Stockman, Buckley, Garza, Allen, Samaya, Garcia, McNamara, Tomlin, Kee, Rubacalaba, Poblete, Reyes, Renoso, Gonzales, Compos, and Morales, plaintiff may so notify the court in writing. The court will then issue Findings and Recommendations recommending that defendant Madrigal be dismissed from this action, and will forward plaintiff summonses and USM-285 forms to fill out and return to the court. Upon receipt of these documents, the court will direct the United States Marshal to initiate service of process on defendants Spidle, Perry, Doyle, Dreith, Dangler, Watson, Stockman, Buckley, Garza, Allen, Samaya, Garcia, McNamara, Tomlin, Kee, Rubacalaba, Poblete, Reyes, Renoso, Gonzales, Compos, and Morales.

In the event that plaintiff does wish to amend his complaint, plaintiff is advised Local Rule 15-220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case. Therefore, in an amended complaint,

as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights. See <u>Ellis v. Cassidy</u>, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how each named defendant is involved. There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976); <u>May v. Enomoto</u>, 633 F.2d 164, 167 (9th Cir. 1980); <u>Johnson v. Duffy</u>, 588 F.2d 740, 743 (9th Cir. 1978).

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send plaintiff a civil rights complaint form;

2. Within **thirty (30) days** from the date of service of this order, plaintiff must either:

    a. File an amended complaint curing the deficiencies identified by the court in this order, or

    b. Notify the court in writing that he does not wish to file an amended complaint and wishes to proceed only against defendants Spidle, Perry, Doyle, Dreith, Does 1 through 3, Dangler, Watson, Stockman, Buckley, Garza, Allen, Samaya, Garcia, McNamara, Tomlin, Kee, Rubacalaba, Poblete, Reyes, Renoso, Gonzales, Compos, and Morales; and

3. If plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order.

IT IS SO ORDERED.

Dated:   **June 12, 2007**              **/s/ Dennis L. Beck**
                                                 UNITED STATES MAGISTRATE JUDGE