# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

DAVON E. McCOY,

                        Plaintiff,

        v.

R. SPIDLE, et al.,

                        Defendants.

_____/

CASE NO. 1:07-cv-00198-AWI-NEW (DLB) PC

FINDINGS AND RECOMMENDATIONS
RECOMMENDING DISMISSAL OF
MEDICAL CLAIM AGAINST DEFENDANT
MADRIGAL AND DISMISSAL OF
DEFENDANT MADRIGAL FROM THIS
ACTION

(Doc. 1)

I.      Findings and Recommendations Following Screening of Complaint

        A.      Procedural History

        Plaintiff Davon E. McCoy ("plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed this action on February 6, 2007.  The events at issue in this action allegedly occurred at High Desert State Prison and California State Prison-Corcoran (CSP-Corcoran).  Plaintiff is seeking money damages and declaratory relief for the violation of his constitutional rights to due process, to be free from retaliation, and to medical care.

        On June 13, 2007, the court screened plaintiff's complaint and issued an order finding that plaintiff's complaint states cognizable claims for relief against defendants Spidle, Perry, Doyle, Dreith, Does 1 through 3, Dangler, Watson, Stockman, Buckley, Garza, Allen, and Samaya for denial of due process, against defendant Dangler for retaliation, and against defendants Garcia, McNamara, Tomlin, Kee, Rubacalaba, Poblete, Reyes, Renoso, Gonzales,

1

1 | Compos, and Morales for acting with deliberate indifference to plaintiff's serious medical needs.
2 | The court found, however, that plaintiff's complaint does not state a cognizable claim for relief
3 | against defendant Madrigal for acting with deliberate indifference to plaintiff's serious medical
4 | needs.  The court ordered plaintiff to either file an amended complaint or notify the court of his
5 | willingness to proceed only on the claims found to be cognizable by the court.  On July 11, 2007,
6 | plaintiff filed a notice stating that he has decided not to amend and is willing to proceed only on
7 | his cognizable claims.

8 |       B.    <u>Screening Requirement</u>

9 |       The court is required to screen complaints brought by prisoners seeking relief against a
10 | governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The
11 | court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally
12 | "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek
13 | monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).
14 | "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall
15 | dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a
16 | claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

17 |       "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited
18 | exceptions," none of which applies to section 1983 actions.  <u>Swierkiewicz v. Sorema N. A.</u>, 534
19 | U.S. 506, 512 (2002); Fed. R. Civ. P. 8(a).  Pursuant to Rule 8(a), a complaint must contain "a
20 | short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R.
21 | Civ. P. 8(a).  "Such a statement must simply give the defendant fair notice of what the plaintiff's
22 | claim is and the grounds upon which it rests."  <u>Swierkiewicz</u>, 534 U.S. at 512.  A court may
23 | dismiss a complaint only if it is clear that no relief could be granted under any set of facts that
24 | could be proved consistent with the allegations.  <u>Id</u>. at 514.  "'The issue is not whether a plaintiff
25 | will ultimately prevail but whether the claimant is entitled to offer evidence to support the
26 | claims.  Indeed it may appear on the face of the pleadings that a recovery is very remote and
27 | unlikely but that is not the test.'"  <u>Jackson v. Carey</u>, 353 F.3d 750, 755 (9th Cir. 2003) (quoting
28 | <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974)); <u>see also</u> <u>Austin v. Terhune</u>, 367 F.3d 1167, 1171

1   (9th Cir. 2004) ("'Pleadings need suffice only to put the opposing party on notice of the claim . . .

2   .'" (quoting <u>Fontana v. Haskin</u>, 262 F.3d 871, 977 (9th Cir. 2001))).  However, "the liberal

3   pleading standard . . . applies only to a plaintiff's factual allegations." <u>Neitze v. Williams</u>, 490

4   U.S. 319, 330 n.9 (1989).  "[A] liberal interpretation of a civil rights complaint may not supply

5   essential elements of the claim that were not initially pled." <u>Bruns v. Nat'l Credit Union Admin.</u>,

6   122 F.3d 1251, 1257 (9th Cir. 1997) (quoting <u>Ivey v. Bd. of Regents</u>, 673 F.2d 266, 268 (9th Cir.

7   1982)).

8          C.     <u>Plaintiff's Claims</u>

9                 1.     <u>Due Process Claims</u>

10         While at High Desert State Prison, plaintiff was issued a Rules Violation Report for

11  conspiracy to murder peace officers on May 2, 2005, and retained in administrative segregation

12  pending a disciplinary hearing.  Defendant Spidle was assigned as an investigative employee, but

13  failed collect from plaintiff the written questions plaintiff wanted asked of plaintiff's requested

14  witnesses, who were inmates and C-5 officers.  Defendant Spidle then erroneously documented

15  that plaintiff wanted C-3 officers called as character witnesses.  On June 15, 2005, plaintiff's

16  disciplinary hearing was conducted by defendant Perry, with participation by defendant Doyle,

17  despite plaintiff's complaints that the investigative employee's report was incomplete and

18  defendant Spidle had not collected his witness questions.  Defendants Perry and Doyle also

19  denied plaintiff's request for witnesses, made at the hearing, without explanation and later

20  reported that plaintiff did not ask for any witnesses.  Plaintiff was found guilty and assessed a

21  credit forfeiture of one-hundred eighty days.

22         On July 7, 2005, due to discrepancies in the confidential reports used to find plaintiff

23  guilty, Chief Deputy Warden R. K. Wong ordered Institutional Classification Committee

24  members defendants Dreith and Does 1 through 3 to reissue and rehear the Rules Violation

25  Report.  Defendants Dreith and Does 1 through 3 disregarded the order and on July 21, 2005,

26  assessed plaintiff a forty-eight month Security Housing Unit term in absentia.  Plaintiff was

27  transferred to CSP-Corcoran to serve his SHU term.

28  ///

On July 17, 2005, plaintiff filed an inmate appeal challenging the finding of guilt against him. On September 6, 2005, plaintiff filed another inmate appeal against defendant Dangler for mishandling plaintiff's prior appeal. On January 26, 2006, plaintiff's appeal of his disciplinary hearing was granted and the charge against him for conspiracy to murder peace officers was dismissed. On April 12, 2006, plaintiff's SHU term was vacated and he was released to general population. On April 27, 2006, defendant Dangler, in retaliation against plaintiff for filing an appeal against him, issued a memorandum reassessing the forty-eight month SHU term.

On June 15, 2006, plaintiff appeared before ICC members defendants Watson, Stockman, Buckley, Garza, Allen, and Samaya for review and approval of defendant Dangler's reassessment of the SHU term. Plaintiff asserted that he had been denied due process because he had not been issued a Rules Violation Report, had not been found guilty of any offense, and had not been allowed to collect evidence or present witnesses. Nevertheless, defendants Watson, Stockman, Buckley, Garza, Allen, and Samaya approved the assessment of a forty-eight month SHU term.

The Due Process Clause protects against the deprivation of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to invoke the protection of the Due Process Clause, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. Wilkinson v. Austin, 125 S.Ct. 2384, 2393 (2005). The Due Process Clause itself does not confer on inmates a liberty interest in avoiding "more adverse conditions of confinement." Wilkinson, 125 S.Ct. at 2393; Hewitt v. Helms, 459 U.S. 460, 466-68 (1983). Under state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. Sandin v. Conner, 515 U.S. 472, 481-84 (1995). Liberty interests created by state law are "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300 (1995); Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007). Plaintiff has alleged sufficient facts in his complaint to demonstrate that the conditions in the SHU differed from general population differed to the extent that plaintiff has a protected liberty interest in remaining free from the SHU. (Comp., ¶¶33, 34.)

1    However, where "success in a . . . [section] 1983 damages action would implicitly

2    question the validity of conviction or duration of sentence, the litigant must first achieve

3    favorable termination of his available state, or federal habeas, opportunities to challenge the

4    underlying conviction or sentence." Muhammad v. Close, 540 U.S. 749, 751, 124 S.Ct. 1303,

5    1304 (2004) (citing to Heck v. Humphrey, 512 U.S. 477 (1994)); Wilkinson v. Dotson, 544 U.S.

6    74, 81-2, 125 S.Ct. 1242, 1248 (2005).   Edwards v. Balisok, 520 U.S. 641, 648 (1997).  Thus,

7    where the punishment imposed at a disciplinary hearing results in the loss of time credits, thereby

8    affecting the duration of a prisoners's sentence, any claims arising from the disciplinary hearing

9    are barred until such time as the prisoner invalidates the result of the disciplinary hearing.  In this

10   instance, plaintiff was initially assessed a credit forfeiture, which would bar his due process

11   claims and his retaliation claim, discussed below.  However, construing the allegations in the

12   light most favorable to plaintiff, it appears that when the charge against him was dismissed, the

13   assessment of both the credit forfeiture and the SHU term were rescinded, and the habeas

14   termination rule does not apply to bar these claims.

15   Turning to what procedure is due, "[p]rison disciplinary proceedings are not part of a

16   criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not

17   apply." Wolff, 418 U.S. at 556.  With respect to prison disciplinary proceedings, the minimum

18   procedural requirements that must be met are:  (1) written notice of the charges; (2) at least 24

19   hours between the time the prisoner receives written notice and the time of the hearing, so that

20   the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence

21   they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call

22   witnesses in his defense, when permitting him to do so would not be unduly hazardous to

23   institutional safety or correctional goals; and (5) legal assistance to the prisoner where the

24   prisoner is illiterate or the issues presented are legally complex. Id. at 563-71.  As long as the

25   five minimum Wolff requirements are met, due process has been satisfied.  Walker v. Sumner,

26   14 F.3d 1415, 1420 (9th Cir. 1994).

27   Plaintiff has alleged sufficient facts to support a claim that defendants Spidle, Perry,

28   Doyle, Dreith, Does 1 through 3, Dangler, Watson, Stockman, Buckley, Garza, Allen, and

1   Samaya deprived him of his protected liberty interest in remaining free from the SHU without

2   procedural due process.

3                    2.      Retaliation Claim

4          Allegations of retaliation against a prisoner's First Amendment rights to speech or to

5   petition the government may support a section 1983 claim.  Rizzo v. Dawson, 778 F.2d 527, 532

6   (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v.

7   Rowland, 65 F.3d 802, 807 (9th Cir. 1995).  "Within the prison context, a viable claim of First

8   Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some

9   adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that

10  such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did

11  not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-

12  68 (9th Cir. 2005).  An allegation of retaliation against a prisoner's First Amendment right to file

13  a prison grievance is sufficient to support claim under section 1983.  Bruce v. Ylst, 351 F.3d

14  1283, 1288 (9th Cir. 2003).

15         Plaintiff's allegation that defendant Dangler reassessed the forty-eight month SHU term

16  in retaliation against plaintiff for filing an inmate appeal against him is sufficient to state a claim

17  for relief under section 1983.

18                   3.      Denial of Medical Care

19         Plaintiff alleges that on July 5, 2006, while in the CSP-Corcoran SHU, he felt he was

20  about to have a seizure, and alerted defendants Tomlin and Kee and asked them to summon

21  medical staff.  Defendants ignored plaintiff and walked away.  Several minutes later, plaintiff

22  yelled through his door at defendant Garcia to have defendants McNamara, Tomlin, Kee, and

23  Rubacalaba summon medical attention because he was about to have a seizure.  Defendant

24  Garcia ignored plaintiff.  Other prisoners then began to yell that there was a man down in cell 27

25  due to a medical emergency, but defendants Garcia, McNamara, Tomlin, Kee, and Rubacalaba

26  ignored them.  Plaintiff thereafter suffered a seizure which rendered him unconscious.  Plaintiff

27  injured his foot, head, and shoulder when he fell to the ground.  When plaintiff regained

28  consciousness, other prisoners were yelling there was a man down.  However, defendants

1   McNamara, Tomlin, Kee, and Rubacalaba ignored them and went home when their shift ended

2   without responding.  In response, the other prisoners "boarded up," a process which forces staff

3   response due to the covering of cell windows and doors.  (Comp., ¶58.)

4        After approximately thirty minutes, defendant Madrigal finally responded to the

5   prisoners' act of boarding up and learned the reason behind it.  Defendant Madrigal saw

6   plaintiff's injuries, and alerted medical staff.  Defendant Poblete, a medical technical assistant,

7   arrived and examined plaintiff through the food port in the cell door.  Defendant Poblete

8   documented that plaintiff sustained an injured foot, a bitten tongue, a hurt cranium, and a

9   dislocated shoulder from a seizure.  Plaintiff alleges that a bone was sticking out of his shoulder,

10  and he told defendant Poblete he was in severe pain and needed a doctor.  Defendant Poblete left

11  to consult with his supervisor, defendant Reyes, a registered nurse. When defendant Poblete

12  returned, he reported that defendant Reyes said plaintiff would not receive medical treatment

13  unless he was dying and would be put on the sick call list for the next day.

14       Between June 6, 2006, and June 9, 2006, plaintiff notified defendants Renoso, Gonzales,

15  Compos, and Morales he was injured and in pain, but they did nothing.  On June 9, 2006,

16  plaintiff was summoned to the medical clinic regarding an unrelated issue and was examined by

17  Dr. Rohor.  Dr. Rohor ordered that plaintiff be taken to the ER immediately when he saw the

18  bone sticking out of plaintiff's shoulder.  Once there, plaintiff received an x-ray by Dr. Sanchez

19  and was admitted for surgery for a torn rotator cuff.

20       To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison

21  conditions must involve "the wanton and unnecessary infliction of pain."  Rhodes v. Chapman,

22  452 U.S. 337, 347 (1981).  A prisoner's claim of inadequate medical care does not rise to the

23  level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of

24  the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with

25  deliberate indifference in doing so.'"  Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004)

26  (quoting Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)).  A prison

27  official does not act in a deliberately indifferent manner unless the official "knows of and

28  disregards an excessive risk to inmate health or safety."  Farmer v. Brennan, 511 U.S. 825, 834

1    (1994). Deliberate indifference may be manifested "when prison officials deny, delay or

2    intentionally interfere with medical treatment," or in the manner "in which prison physicians

3    provide medical care." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on

4    other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

5    Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to

6    further harm in order for the prisoner to make a claim of deliberate indifference to serious

7    medical needs. McGuckin, 974 F.2d at 1060 (citing Shapely v. Nevada Bd. of State Prison

8    Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

9        Plaintiff's allegations are sufficient to support a claim for relief under section 1983

10   against defendants Garcia, McNamara, Tomlin, Kee, Rubacalaba, Poblete, Reyes, Renoso,

11   Gonzales, Compos, and Morales for acting with deliberate indifference to plaintiff's serious

12   medical needs, in violation of the Eighth Amendment. Fed. R. Civ. P. 8(a). However, plaintiff's

13   allegations to not give rise to a claim for relief against defendant Madrigal. Defendant Madrigal

14   summoned medical care for plaintiff when he saw plaintiff's injuries. There are no allegations to

15   support a claim that defendant Madrigal "[knew] of and disregard[ed] an excessive risk to

16   [plaintiff's] health or safety." Farmer, 511 U.S. at 837.

17       D.    Conclusion

18       Plaintiff's complaint states cognizable claims for relief against defendants Spidle, Perry,

19   Doyle, Dreith, Does 1 through 3, Dangler, Watson, Stockman, Buckley, Garza, Allen, and

20   Samaya for denial of due process, against defendant Dangler for retaliation, and against

21   defendants Garcia, McNamara, Tomlin, Kee, Rubacalaba, Poblete, Reyes, Renoso, Gonzales,

22   Compos, and Morales for acting with deliberate indifference to plaintiff's serious medical needs.

23   However, plaintiff's complaint does not state a cognizable claim for relief against defendant

24   Madrigal for acting with deliberate indifference to plaintiff's serious medical needs. Plaintiff

25   was provided with the opportunity to file an amended complaint, but plaintiff has opted to

26   proceed only on the claims found to be cognizable by the court.

27   ///

28   ///

8

Accordingly, based on the foregoing, it is HEREBY RECOMMENDED that:

1.  This action proceed on plaintiff's complaint, filed February 6, 2007, against defendants Spidle, Perry, Doyle, Dreith, Does 1 through 3, Dangler, Watson, Stockman, Buckley, Garza, Allen, and Samaya for denial of due process, against defendant Dangler for retaliation, and against defendants Garcia, McNamara, Tomlin, Kee, Rubacalaba, Poblete, Reyes, Renoso, Gonzales, Compos, and Morales for acting with deliberate indifference to plaintiff's serious medical needs; and

2.  Plaintiff's medical claim against defendant Madrigal, and defendant Madrigal, be dismissed from this action for failure to state a claim.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, plaintiff may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

**Dated:    August 30, 2007**            _____ **/s/ Dennis L. Beck** _____
                                         UNITED STATES MAGISTRATE JUDGE