IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| Davon E. McCoy, | Case No. 1:07-cv-198-DCB |
| Plaintiff, | **ORDER** |
| vs. | |
| R. Spidle, et al., | |
| Defendants. | |

The Court grants the Plaintiff's request for further extension of time to file a Response to Motion for Summary Judgment for the sole purpose of allowing him to file a late Response. The Court grants the Motion for Summary Judgment in part, as a matter of law, as to Plaintiff's due process claims because they are barred pursuant to the favorable termination rule. *Edwards v. Balisok*, 502 U.S. 641 (1997). The Motion for Summary Judgment remains pending in all other parts for 30 days to allow Plaintiff to file a Response. There shall be no further extensions and the Motion for Summary Judgment shall be summarily granted and Judgment entered for Defendants in the event the Plaintiff fails to file a Response.

PROCEDURAL BACKGROUND

On February 6, 2007, Plaintiff, confined at Corcoran-Secured Housing Unit (SHU), California, filed a pro se "Civil Rights Complaint By A Prisoner" pursuant to Title 42 U.S.C. § 1983. Pursuant to a screening Order issued by the Court, the case went

forward on Claims One through Three, alleging due process violations in respect to a disciplinary hearing held on June 15, 2005, retaliatory imposition of a term of imprisonment in a security housing unit (SHU), and subsequent retention there pursuant to a second hearing on June 15, 2006, and proceeded on Claims Four and Five, alleging Defendants were deliberately indifferent to his medical needs.

Section 1983 provides that any person acting under color of state law shall be liable for any injuries caused by a "deprivation of any rights, privileges, or immunities *secured by the Constitution and laws" of the United States*. 42 U.S.C. § 1983 (emphasis added). "The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.' " *Baker v. McCollan,* 443 U.S. 137, 140 (1979).

Claims One through Three pertain to a Rules Violation Report (RVR) issued on May 2, 2005, which resulted in a disciplinary proceeding and hearing on June 15, 2005, where Plaintiff was found to have conspired to murder peace officers. As a result, he was assessed 48 months time in a Secured Housing Unit (SHU).

More specifically, Plaintiff alleges that in response to issuance of the RVR for conspiring to murder peace officers, he was removed from general population and held in Administrative Segregation, pending the disciplinary hearing on June 15, 2005. He alleges that due to his Administrative Segregation, he was unable to collect evidence and contact witnesses in general population to defend against the charges. He was assigned an Investigating Employee (I.E.), Defendant Spidle, who failed to collect questions and names of witnesses the Plaintiff wanted him to contact in respect to evidence Plaintiff wanted to present at the hearing. Instead, Spidle wrote in his report that Plaintiff had only requested C-3 officers as character witnesses. At the hearing, Plaintiff requested staff assistance, and the hearing officer, Defendant Perry, assigned Defendant Doyle to assist the Plaintiff at the hearing. Both Perry and Doyle ignored Plaintiff's request for a postponement due to Defendant Spidle's failure to collect the answers to his questions from his proposed witnesses. At the hearing, Plaintiff alleges he requested prisoner

witnesses Williams, Westbrook and Hammond, but Defendants Perry and Doyle denied his request and wrote in their reports that no witnesses were requested. Defendant Perry found Plaintiff guilty of conspiracy to murder peace officers and assessed him 180 days of lost credit.

On review, Warden Wong found discrepancies in the administrative record and ordered review and rehearing of the RVR. Plaintiff alleges that instead of getting a new rehearing, Defendants assessed him 48 months in the SHU based on Defendant Perry's erroneous finding of guilt.

On July 17, 2005, Plaintiff filed a Grievance appealing the disposition of the RVR, pursuant to the June 15, 2005, disciplinary proceeding. On September 6, 2005, Plaintiff filed a Grievance against Defendant Dangler, the Inmate Appeals Coordinator for mishandling his Grievance, which Plaintiff alleges led to an Internal Affairs Directive. On January 25, 2006, the appeal related to the RVR was granted and the disciplinary proceeding was dismissed. Plaintiff's 48 months in SHU was rescinded and he was returned to General Population. Plaintiff alleges that in retaliation for Plaintiff's Grievance filed against Dangler in his capacity as Inmate Appeals Coordinator, Defendant Dangler "reassessed" Plaintiff's assignment to 48 months SHU by sending a memorandum to CSP-COR/SHU on April 27, 2006.

On June 15, 2006, Plaintiff appeared before the ICC for review of Dangler's reassessing the Plaintiff 48 months in SHU. The ICC affirmed the Dangler assessment. Plaintiff remains detained in SHU. Plaintiff alleges his due process rights were violated in respect to the reassessment because no RVR was issued and he had no opportunity to present witnesses at the hearing.

In Claims Four and Five, the Plaintiff alleges that on July 5, 2006, while detained in SHU, he told Defendants that he was epileptic and requested they call medical staff because he felt he was about to have a seizure. He was ignored. Plaintiff did have a seizure and his fellow inmates began yelling "Man Down," which was also ignored. He became unconscious and fell, suffering serious injury to his foot, head, and shoulders. He

regained consciousness and called for help. Still, he was ignored. He was ignored for about an hour before medical staff was called and finally came to his cell. He was denied immediate emergency care and told he would be seen in sick call the next day. He was not, however, seen the next day. Every day he complained of the pain he was suffering due to his visibly dislocated shoulder, but was denied care for four days. Once he was finally seen by the prison doctor, he was sent to the hospital emergency room, hospitalized and scheduled for surgery for a torn rotor cuff.

On February 23, 2009, the Defendants filed a Motion for Summary Judgment. On February 27, 2009, the Court notified the Plaintiff, pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc), that he needed to file a Response to the Motion for Summary Judgment because under Fed. R. Civ. P. 56 if the motion was granted his case would end. Since then, Plaintiff has not filed a Response, but has instead sought extensions of time to conduct further discovery. As a result, the Court has necessarily extended the time for Plaintiff to file a Response, but has not granted Plaintiff leave to conduct further discovery. On April 8, 2009, the Plaintiff sought a stay of proceedings and an Order from this Court to compel disclosure of his own deposition transcript taken on November 24, 2009. He also seeks sanctions against the Defendants for failing to make his transcript available to him to review and make changes in form or substance under Fed. R. Civ. P. 30(e). Plaintiff argues that without the transcript he is unable to oppose the Motion for Summary Judgment. He asks for an extension of time to file his Response.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

On summary judgment, the moving party is entitled to judgment as a matter of law if the Court determines that in the record before it there exists "no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A material fact is any factual dispute

that might effect the outcome of the case under the governing substantive law. *Id.* at 248. A factual dispute is genuine if the evidence is such that a reasonable jury could resolve the dispute in favor of the non-moving party. *Id.*

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, but is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-325 (1986). A party opposing a motion for summary judgment cannot rest upon mere allegations or denials in the pleadings or papers, but instead must set forth specific facts demonstrating a genuine issue for trial. *Liberty Lobby, Inc.*, 477 U.S. at 250. "If evidence is merely colorable ... or is not significantly probative, summary judgment may be granted." *Eisenberg v. Insurance Co. of North Am.*, 815 F.2d 1285, 1288 (9th Cir. 1987). In determining whether to grant summary judgment, the Court views the facts and inferences from these facts in the light most favorable to the non-moving party. *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 577 (1986).

The Judge's role on a motion for summary judgment is not to determine the truth of the matter or to weigh the evidence, or determine credibility, but to determine whether there is a genuine issue for trial. *Liberty Lobby, Inc.*, 477 U.S. at 252. The inquiry mirrors the standard for a directed verdict: whether the evidence presented reveals a factual disagreement requiring submission to a jury or whether evidence is so one sided that one party must prevail as a matter of law. *See*, *Celotex Corp.*, 477 U.S. at 323 (citing *Liberty Lobby*, 477 U.S. at 250) (essentially, the standard for granting summary judgment mirrors that for a directed verdict).

Defendants argue that summary judgment must be granted on all Plaintiff's claims.

Defendants Spidle, Peery, Doyle, Dreith, Watson, Stockman, Buckley, Garza, Allen and Samaya argue that Plaintiff was provided all the due process he was entitled to during his disciplinary hearing on June 15, 2005, and during his classification hearing on June 15, 2006. More importantly, Defendants argue that Plaintiff's due process claims are barred under *Edwards v. Balisok*, 520 U.S. 641 (1997).

Defendant Dangler argues that Plaintiff cannot establish a retaliation claim because his amendment to deny the Grievance, which had initially been granted, was for penological reasons and not motivated by Plaintiff's exercise in September, 2005, of his constitutional right to file a grievance against Dangler.

Defendants argue that Poblete, Tomlin, Kee, Garcia, Rubalcaba, Reyes, Reynoso, Campos, Gonzales, and Morales are entitled to summary judgment because they either never received notice that Plaintiff needed medical assistance or responded to his medical needs.

Defendants, *et al.,* argue that even if the Court finds Plaintiff's constitutional rights were violated, their actions were objectively reasonable so they are entitled to qualified immunity from liability for Plaintiff's damages.

The Court is going to afford the Plaintiff one last opportunity to file a Response to the Defendants' Motion for Summary Judgment, with the exception of the Defendants' argument that the due process claims are barred under *Edwards v. Balisok*. This argument is decided, here, as a matter of law. Further failure to file a Response to the Motion for Summary Judgment shall result in the Court's granting it summarily, without any further notice to the Plaintiff.

## DUE PROCESS HEARING VIOLATION CLAIMS

The Court relies on the allegations in Plaintiff's Complaint as the factual basis for Plaintiff's due process claims related to the June 15, 2005, disciplinary hearing and the June 16, 2006, classification hearing. The Court construes all facts in favor of the Plaintiff.

### Disciplinary Hearing: June 15, 2005

It is undisputed that the Plaintiff received a copy of the RVR, and that Defendant Spidle was assigned to serve as his investigative employee to assist him in preparing for the violation hearing. It is undisputed that Defendant Lt. Peery was the hearing officer, and he assigned Defendant Doyle as a staff assistant for the Plaintiff at the hearing.

Plaintiff alleges that he met with Defendant Spidle on May 19, 2005. He allegedly told Defendant Spidle that he wanted to prepare and submit a written list of questions to be asked of several C-5 officers and prisoners that he wanted to call as witnesses at the hearing. Defendant Spidle agreed to return the following day to retrieve the questions and undertake the task of obtaining answers to the written questions on Plaintiff's behalf. Plaintiff alleges that he wrote out a list of questions to ask the C-5 officers and prisoners Williams, Westbrook and Hammond. Plaintiff alleges that Defendant Spidle never returned to collect the questions and proceed with questioning the proposed witnesses. Instead, Plaintiff alleges that Spidle falsely reported that the Plaintiff only requested C-3 officers as character witnesses. (Complaint at ¶¶ 17-21.)

It is undisputed that the hearing was held on June 15, 2005, before hearing officer Defendant Perry. It is undisputed that the Plaintiff requested, and he was assigned, a staff assistant, Defendant Doyle. Plaintiff alleges he informed both Perry and Doyle that his I.E. report was incomplete because Defendant Spidle had never returned to collect his questions nor question his witnesses. Plaintiff alleges he asked to postpone the hearing pending Defendant Spidle's completion of the Plaintiff's investigation. Defendants Doyle and Perry denied the Plaintiff's request to postpone the disciplinary hearing. Plaintiff alleges he asked to present prisoner witnesses Williams, Westbrook and Hammond, but "Defendants R. Perry and Doyle denied this request without explanation and later wrote in their reports that no witnesses were requested." *Id.* at ¶¶ 22-28, 29.

Defendant Perry found Plaintiff guilty of conspiracy to murder peace officers and assessed him with 180 days loss of good-time credit. *Id.* at 30.

Subsequently, the disciplinary finding was referred to Defendant Dreith to calculate the SHU term for the disciplinary conviction. The 48-month SHU term was subject to review and hearing before the Institutional Classification Committee (ICC), which Plaintiff challenges as follows.

<u>Classification Hearings: July 21, 2005, April 6, May 11 and June 15, 2006.</u>

Plaintiff alleges that on July 7, 2005, Chief Deputy Warden Wong found discrepancies in the administrative record and ordered rehearing the violation. Instead, "on July 21, 2005, in absentia of Plaintiff, Defendant Dreith . . . held another ICC hearing and disregarded the Chief Deputy Warden [] Wong's order to reissue and rehear the RVR against Plaintiff" and "assessed him with a 48 month security housing unit (SHU) program . . ." based solely on Defendant Perry's erroneous and dismissed findings of guilt which were pending rehearing by order of Chief Deputy Wong. *Id.* at ¶¶ 31-32. Plaintiff was transferred to the SHU program.

On July 17, 2005, Plaintiff filed the administrative Grievance appealing the rules violation hearing and conviction. On January 25, 2006, the appeal was granted because Plaintiff was not mentioned in two of the three confidential memorandum supporting the RVR, and the third showed only that he was aware of the plan but there was no supporting documentation to demonstrate he was involved in the planning of the assaults. Additionally, there was no proof as to specific time, date and place when Plaintiff participated in the conspiracy to murder peace officers. (MSJ, SOF, Ex. I: 1/25/06 memo at 4; Ex. E: Appeal Notice at 2.)

On February 21, 2006, however, the appeal decision was amended to deny it, (MSJ, SOF, Ex. E: Appeal Notice at 2) because the hearing officer had reviewed the three confidential memoranda along with the RVR and found a preponderance of guilt, *id.* at Ex. L: 1/25/06 revised memo at 3-4.

Plaintiff alleges that the change was made in retaliation for a Grievance Plaintiff filed against Defendant Dangler, as the appeals coordinator, on September 6, 2005. (Complaint at ¶¶ 36-42.)

On April 6, 2006, Plaintiff appeared before the ICC, and based on the first favorable appeal which dismissed the rules violation, the ICC recommended and placed the Plaintiff in the general population yard. (MSJ, SOF, Ex. H: Committee Action Summary.)

On April 27, 2006, Defendant Dangler wrote a memo explaining that the January 25, 2005, response granting the appeal was rescinded approximately four days after it was issued, and on February 21, 2006, it was reissued as a denial, consequently the rules violation remained in place, and the SHU program remained in place. (MSJ, SOF, Ex. J: 4/27/06 memo.)

Plaintiff was removed from general population and placed in administrative segregation at CSP-Corcoran pending review by the ICC. On May 11, 2006, the ICC reviewed and affirmed the administrative SHU assignment, pending SHU program review. (*Id.*, Ex. M: Committee Action Summary.) On June 15, 2006, the ICC held the SHU program review hearing.

### The June 15, 2006, SHU Classification Hearing

On June 15, 2006, Plaintiff appeared before ICC members Defendants Watson, Stockman, Buckley, Garza, Allen and Samaya for review and approval of Defendant Dangler's reassessing Plaintiff the 48 month SHU term. Plaintiff explained he was not afforded his due process because a RVR had not been issued nor had he been found guilty of any violation. He complained that he had not been allowed to collect evidence or call witnesses. Defendants rejected his due process claims, approved the 48-month SHU assessment, and detained Plaintiff in SHU. (Complaint at ¶¶ 43- 45.)

//////

//////

### Due Process Analysis

Assuming Plaintiff has a liberty interest to be free from loss of good time credits, he is entitled to due process protections under the Fourteenth Amendment as follows: 1) written notice of the charges; 2) a statement of the evidence relied upon by the prison officials and the reasons for disciplinary action; 3) an opportunity to call witnesses and present documentary evidence when permitting him to do so would not unduly threaten institutional safety and goals, and 4) assistance from staff when the inmate is illiterate or

the issues presented in the charge are complex. *Wolf v. McDonnell*, 418 U.S. 539, 563-66, 570 (1974). Due process is satisfied as long as there is some evidence to support the decisions of the disciplinary board. *Cato v. Rushen*, 824 F.2d 703, 704 (9th Cir. 1987) (citing *Superintendent, Massachusetts Correctional Institution v. Hill*, 472 U.S. 445, 448 (1985)).

Due process for placement in segregated housing requires only that the prisoner received some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether or not to transfer him to administrative segregation. *Hewitt v. Helms*, 459 U.S. 460, 476 (1983). Prison officials must inform the prisoner of the charges against him or their reasons for considering segregation. The hearing may be informal, nonadversarial, and held within a reasonable time after the prisoner is segregated. The prisoner need only be allowed to present his views. *Toussaint v. McCarthy*, 801 F.2d 1080, 1100 (9th Cir. 1986).

Plaintiff misconstrues the June 15, 2006, ICC segregated housing classification hearing as requiring the same due process as his disciplinary hearing. His complaints that a RVR was not issued and he was not allowed to present witnesses do not allege due process violations in respect to the ICC's review of the 48-month SHU term. It is undisputed that he was given notice and an opportunity to be heard. This was all the process he was due at the classification hearing.

As to the due process afforded him in respect to the disciplinary hearing, he does not challenge the sufficiency of the evidence against him to meet the very low standard of "some evidence" to support the decision. *See Hill*, 472 U.S. at 455 (describing the low standard as being met as long as there is any evidence in the record that could support the hearing decision).[1]

Plaintiff received: 1) written notice of the charges; 2) a statement of the evidence relied upon by the prison officials and the reasons for the disciplinary action; and 3)

---

[1] *See* n. 3.

assistance from staff at the hearing. His alleged due process violation is related to his right to call witnesses and present documentary evidence.

Plaintiff alleges that Defendant Spidle failed to return to collect his questions, failed to question his witnesses, then failed to record that Plaintiff asked for such assistance and instead reported that he only asked for correction officer character witnesses. Plaintiff alleges that Defendants Perry and Doyle disregarded his complaints that the I.E. report was incomplete and he needed additional time to prepare for the hearing. Defendant Perry refused his request to continue the hearing. Most importantly, Plaintiff alleges that Defendants falsified their reports to reflect that he did not ask for a continuance and did not ask to call any witnesses, except for the character witnesses.

The Plaintiff's assertions of bias and dishonesty are necessary to counter the Defendants' reports, which reflect Plaintiff was given all the process he was due. *Cf.,* (MSJ, SOF, Ex. C: RVR (reflecting Plaintiff's signature and initials acknowledging he did not request witnesses nor request continuance).

If the Court were persuaded by Plaintiff's charges and granted him relief on his due process claims, it would render the rules violation and subsequent good-time credit forfeiture invalid. Such a claim may not be brought under section 1983 "unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of writ of habeas corpus." *Butterfield v. Bail*, 120 F.3d 1023, 1025 (9th Cir. 1997). Plaintiff's claim is barred by the favorable termination rule under *Edwards v. Balisok*, 502 U.S. 641, 648 (1997).

### *Edwards v. Balisok*

In *Edwards*, a prisoner brought a claim under section 1983 challenging a loss of good-time credits based on alleged due process violations at his disciplinary proceeding because the hearing officer refused to ask questions of requested witnesses, denied him the right to present evidence on his own behalf, and lied about the nonexistence of witness statements. *Edwards*, 502 U.S. at 646-47.

1    The Supreme Court has spoken loud and clear that the only remedy in federal court
2    for a prisoner seeking restoration of lost good-time credits is habeas corpus, not section
3    1983. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *Heck v. Humphrey*, 512 U.S. 477,
4    487 (1994). This is because a suit challenging deprivation of good-time conduct credits
5    necessarily challenges the duration of the inmate's confinement, and Congress has
6    determined that habeas corpus is the appropriate remedy for prisoners attacking the
7    validity of the fact and length of their confinement. *Preiser*, 411 U.S. at 487-88, 490; *see*
8    *also Wolff v. McDonnell,* 418 U.S. 539, 570-71 (1974) (explaining there is a protected
9    liberty interest in shortened prison sentence which results from good-time credits). A
10   challenge under section 1983, seeking only damages and declaratory relief for procedural
11   due process violations is also barred if the nature of the challenge would necessarily
12   imply the invalidity of the deprivation of good-time credits. *Edwards*, 502 U.S. at 643
13   (citing *Heck*, 512 U.S. at 487).

14   The Supreme Court described in *Heck* what has come to be known as the
15   "favorable termination" rule: when a section 1983 claim *would necessarily* implicate the
16   validity of the conviction or sentence, "a [] plaintiff must prove that the conviction or
17   sentence has been reversed on direct appeal, expunged by executive order, declared
18   invalid by a state tribunal authorized to make such determination, or called into question
19   by a federal court's issuance of a writ of habeas corpus. *Heck*, 512 U.S. at 486-87. The
20   "favorable termination" rule does not, however, apply if a successful section 1983 action
21   *would not necessarily* result in an earlier release from incarceration, then it does not
22   intrude upon the "heart" of habeas jurisdiction. *Ramirez v. Galaza*, 334 F.3d 850, 856-57
23   (9th Cir. 2002).

24   In *Edwards*, the Court explained that in response to the obvious procedural defect
25   claimed by Edwards, which was that he had been precluded from submitting witness
26   statements at his disciplinary proceeding, state and federal courts will reinstate good-time
27   credits, absent a new hearing. *Edwards*, 502 U.S. at 647 (citations omitted). Edwards'
28   claim, however, went further. He claimed that the cause of the exclusion was the deceit

and bias of the hearing officer. Edwards claimed the hearing officer lied about the nonexistence of witness statements, intentionally denying him the right to present these witnesses. "A criminal defendant tried by a partial judge is entitled to have his conviction set aside, no matter how strong the evidence against him." *Id.* (citations omitted). "The due process requirements for a prison disciplinary hearing are in many respects less demanding than those for criminal prosecution, but they are not so lax as to let stand the decision of a biased hearing officer who dishonestly suppresses evidence of innocence. *Id.* (citing *cf. Wolff*, 418 U.S. at 570-71).

Here, Plaintiff makes the same challenge made by Edwards. Just as the Court concluded in *Edwards*, this claim necessarily implies the invalidity of the punishment imposed and is not cognizable under section 1983. For Plaintiff to prevail, this Court must declare the disciplinary conviction invalid due to the bias and dishonesty of the Defendants. Such an invalidated conviction must be set aside. *Edwards*, 502 U.S. at 647. Then, the SHU term would be subject to revocation and termination. Just as assuredly, the setting aside of the disciplinary conviction would necessitate return of the forfeited good-time credits and would correspondingly reduce the Plaintiff's sentence.[2] This is not a case like *Ramirez v. Galaza*, 334 F.3d 850 (9th Cir. 2003), where the only consequence of invalidating the disciplinary conviction is the revocation or termination of SHU, without affecting the length of incarceration.

Under *Edwards,* the Plaintiff must proceed by habeas. Here, Plaintiff brought a state habeas claim, which failed in spite of the errors made in the review of his administrative appeal, because the court held there was some evidence to support the

---

[2] The Court basis its reasoning on the RVR, Part C, which reflects that the disposition of the disciplinary proceeding included the referral to the ICC for an assessment of the SHU term, counseling and reprimand, and 180 days forfeiture of credit. (MSJ, SOF, Ex. C at ¶ Disposition. The Court may stand corrected by Plaintiff's Response, in the event it has erred in concluding that good-time credit was lost as a result of the due process violations alleged by the Plaintiff.

1 disciplinary conviction. (Ds' MSJ at 14; *see also* Request for Judicial Notice filed
2 2/20/09.)[3]

As long as the disciplinary conviction stands, Plaintiff's claim that Defendant Dreith refused to rehear the RVR and instead assessed the 48-month SHU term must fail. Plaintiff's claim against Defendant Dangler for denying his Grievance appealing the disciplinary decision also fails, except for the claim of retaliation.

There is no protected right to a specific grievance process or outcome. *Ramirez*, 334 F.3d at 860 (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure) (citing *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988); *see also Sandin v. Conner*, 515 U.S. 472, 484 (1995) (liberty interests are generally limited to freedom from restraint which imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of comparable prison life). There is, however, a First Amendment right to file prison grievances, *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005) (citing *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003)), and to pursue civil rights litigation in the courts, *id.* (citing *Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995)).

Within the prison context, a claim of First Amendment retaliation includes: 1) an assertion that a state actor took some adverse action against an inmate; 2) because of 3) that prisoner's protected conduct, and that such action 4) chilled the inmate's exercise of his First Amendment rights, and 5) the action did not reasonably advance a legitimate correctional goal. *Id.* at 567-68. A successful retaliation claim requires a finding that "the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) (citations omitted). The Plaintiff bears the

---

[3] The Court takes judicial notice that on January 4, 2007, the Superior Court fo California, County of Kings, denied the Petition for Writ of Habeas Corpus (*In re Davon McCoy*, Superior Court of California, County fo Kings, Case No. 06W0182A).

1 | burden of pleading and proving the absence of legitimate correctional goals for the
2 | conduct he challenges. *Id.*

3 | The Court has reviewed the allegations against Defendant Dangler and the
4 | evidence attached to the Defendants' Motion for Summary Judgment. Based on the
5 | evidence currently before it, the Court finds at the most there is a scintilla of evidence to
6 | support the retaliation claim. Plaintiff alleges Defendant Dangler amended the appeal
7 | decision on April 27, 2006, to deny the Grievance, which had previously been granted on
8 | January 25, 2006. Plaintiff filed the Grievance appealing the RVR disciplinary
9 | proceeding on July 17, 2005, and filed a Grievance against Defendant Dangler on
10 | September 6, 2005. Timing may properly be considered as circumstantial evidence of
11 | retaliatory intent. *Id.* (citing *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1316 (9th
12 | Cir. 1989)).

13 | The Plaintiff, however, fails to acknowledge that Defendant Dangler signed the
14 | original decision granting the appeal on January 25, 2006, and the denial, which was
15 | issued on February 21, 2006. (MSJ, SOF, Ex. E: Appeal Notice at 2.) Both actions were
16 | taken after Plaintiff filed the Grievance in September, 2005, against Defendant Dangler.
17 | The Court also notes that there is evidence in the record which reflects there were only
18 | four days between the time when the first decision granting the appeal was issued and it
19 | was determined it should be withdrawn and denied, but it took another 20 some days to
20 | issue the denial. See (MSJ, SOF, Dangler Depo. at ¶¶ 4-8.) This small four-day window
21 | of time reduces any inference of retaliation. It is unlikely that Defendant Dangler would
22 | not have known of the September 2005 Grievance and, therefore, signed the January 25,
23 | 2006, decision granting the appeal, and then within the next four days discovered the
24 | existence of the September 2005 Grievance and, therefore, initiated the denial of the
25 | Grievance on January 29, 2006.

26 | Plaintiff has not responded to the Defendants' Motion for Summary Judgment.
27 | Instead, he seeks an extension of time to file his opposition because he wants a copy of
28 | the transcript from his deposition. Plaintiff does not provide any insight into what he may

have said at his deposition that he now seeks to offer in opposition to Defendants' Motion for Summary Judgment. Plaintiff does not provide evidence that "before the deposition was completed, he requested to review the deposition as is required under Fed. R. Civ. P.30(e). Nevertheless, the transcript of the deposition has been provided to him by the Defendants. (Notice of Lodging Deposition Transcript, filed April 23, 2009.)

Plaintiff has repeatedly been informed that his failure to file a Response to the Motion for Summary Judgment may result in the Court summarily dismissing this case by granting of the Defendants' Motion for Summary Judgment.

**Accordingly,**

**IT IS ORDERED** that the Motion for Summary Judgment (document 99) is GRANTED IN PART, as a matter of law, for Defendants Spidle, Perry, Doyle, Dreith, Watson, Stockman, Buckley, Garza, Allen, Samaya and Dangler as to the due process claims, Claims One through Three.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion for Extension of Time to File Opposition (document 118) shall be granted for the sole purpose of allowing the Plaintiff 30 days from the filing date of this Order to file a Response to the Motion for Summary Judgment.

**IT IS FURTHER ORDERED** NO FURTHER EXTENSIONS SHALL BE GRANTED. In the event the Plaintiff fails to file a Response within 30 days of the filing date of this Order, the remainder of the Motion for Summary Judgment (document 99) may be summarily granted without further notice to the Plaintiff.

**IT IS FURTHER ORDERED** that the Exparte Motion for Expedited Ruling on Motion for Extension of Time (document 117) is DENIED.

**IT IS FURTHER ORDERED** that the Request for Imposition of Sanctions (document 116) is DENIED.

**IT IS FURTHER ORDERED** that the Request for Stay (document 115) is DENIED.

**IT IS FURTHER ORDERED** that the Defendants' Request for Judicial Notice (document 104) is GRANTED.

DATED this 4th day of May, 2009.

David C. Bury
United States District Judge