1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10

Davon E. McCoy,                    )    No. CV-07-198-SMM
                                   )
11          Plaintiff,             )    **ORDER**
                                   )
12   vs.                           )
                                   )
13   R. Spidle, et al.,            )
                                   )
14          Defendants.            )
                                   )
15                                 )
     _____)
16

17          Before the Court is Defendants' Motion to Sever Claims and Bifurcate Damages (Doc.

18   200.) Plaintiff has responded (Doc. 202) and Defendants did not file a reply. After

     consideration of the arguments advanced by the parties, the Court makes the following
19
     rulings.[1]
20
                                 **BACKGROUND**
21
            On February 6, 2007, Plaintiff, who is currently confined at Salinas Valley State
22
     Prison, brought this 42 U.S.C. § 1983 action against Defendants employed by the California
23
     Department of Corrections and Rehabilitation (the "CDCR"). (Doc. 1.) As Defendants
24
     prevailed in part on a motion for summary judgment (Doc. 123 at 16), three claims remain:
25
     Plaintiff's retaliation claim (Claim II) against Defendant M. Dangler ("Dangler") and
26

27   _____

28          [1]Neither Defendants in their Motion to Sever Claims and Bifurcate Damages (Doc.
     200) nor Plaintiff in his Response (Doc. 202) requested oral argument. The Court therefore finds
     the action suitable for decision without oral argument. See LRCiv 230(g).

1   Plaintiff's deliberate indifference claims (Claims IV and V) against numerous Defendants.

2   (Doc. 1 at 11-12, 14-19.) Plaintiff also seeks punitive damages. (Doc. 1 at 23.)

3   **Claim II – Retaliation**

4        Plaintiff alleges that Dangler, an Inmate Appeals Coordinator, retaliated against him

5   for exercising his constitutional right to administratively appeal a disciplinary proceeding.

6   (Doc. 1 ¶¶ 36-42). Plaintiff, while a prisoner at High Desert State Prison, received a Rules

7   Violation Report ("RVR") resulting in a disciplinary proceeding on June 15, 2005, in which

8   Plaintiff was found to have conspired to murder peace officers. (Doc. 1 ¶ 30; Doc. 123 at 3.)

9   At the conclusion of the disciplinary proceeding, Plaintiff was assessed 48 months at the

10  Secured Housing Unit ("SHU") at California State Prison, Corcoran. (Doc. 1 ¶ 32; Doc. 123

11  at 3.) On July 17, 2005, Plaintiff filed an initial grievance appealing that disposition. (Doc.

12  1 ¶ 36; Doc. 123 at 3.)

13        On September 6, 2005, Plaintiff filed a second grievance against Dangler for

14  mishandling his initial grievance. (Doc. 1 ¶ 37; Doc. 123 at 3.) Plaintiff alleges this second

15  grievance led to an Internal Affairs Directive. (Doc. 1 ¶ 37; Doc. 123 at 3.) On January 25,

16  2006, the initial grievance related to the RVR was granted, the disciplinary proceeding was

17  dismissed, the 48 months in SHU was suspended, and Plaintiff was returned to general

18  population. (Doc. 1 ¶¶ 38-39; Doc. 123 at 3.) Plaintiff alleges that in retaliation for the

19  second grievance filed against Dangler, Dangler "reassessed" Plaintiff's assignment by

20  sending a memorandum on April 27, 2006, resulting in Plaintiff's return to SHU. (Doc. 1 ¶

21  40; Doc. 123 at 3.) Dangler contends that he was unaware of Plaintiff's second grievance at

22  that time. (Doc. 100 at 23.) Dangler further asserts that his decision to return Plaintiff to SHU

23  was supported by legitimate penological grounds relating to evidence that Plaintiff had

24  conspired to murder peace officers, and that the decision was affirmed by the Institutional

25  Classification Committee on June 15, 2006. (Doc. 100 at 22-23, Doc. 123 at 3.)

26

27

28

1  **Claims IV and V – Deliberate Indifference**

2      Plaintiff suffers from a seizure disorder, which requires close observation and routine

3  seizure medication. (Doc. 142 at 10.) While at SHU, Plaintiff allegedly complained to a nurse

4  on June 5, 2006 that he was having a seizure and requested hospitalization. (Doc. 142 at 10.)

5  The nurse allegedly advised that Plaintiff was to be watched and referred to the yard nurse

6  in the morning. (Doc. 142 at 10.) Plaintiff alleges that Defendants M. R. Garcia, B. Kee, I.

7  Rubalcaba, and S. Tomlin ("Defendant Prison Officials") ignored his and other inmate's

8  subsequent pleas for medical assistance, and that Plaintiff had a seizure, allegedly suffering

9  serious injury to his foot, head, and shoulders. (Doc. 1 ¶¶ 48-54; Doc. 142 at 10.) It is

10  undisputed that Plaintiff had a seizure, fell, and dislocated his shoulder. (Doc. 142 at 10.)

11      After Plaintiff regained consciousness, Defendant Prison Officials allegedly ignored

12  repeated calls for help for more than an hour before summoning medical staff. (Doc. 1 ¶¶ 55-

13  56; Doc. 123 at 4.) After Plaintiff's seizure, Defendants K. Campos, C. Gonzales, Morales,

14  R. Poblete, C. Reyes, and D. Reynoso ("Defendant Prison Medical Officials") allegedly

15  denied Plaintiff immediate emergency care but told Plaintiff he would be seen in sick call the

16  next day. (Doc. 1 ¶¶ 58-74; Doc. 123 at 4.) The following day, on June 6, 2006, Plaintiff

17  allegedly received seizure medications but Defendant Prison Medical Officials allegedly did

18  not treat his shoulder injury. (Doc. 1 ¶ 68; Doc. 142 at 10.) On June 7, 2006, Plaintiff was

19  transferred to a hospital and scheduled for surgery, a procedure that was later cancelled.

20  (Doc. 142 at 10-11.)

21                    **PROCEDURAL BACKGROUND**

22      On December 21, 2010, the Court issued a Pretrial Order in this case stating that

23  discovery is closed with the exception of expert discovery, which is to be completed by

24  February 28, 2011. (Doc. 198 at 1.) The parties' proposed Pretrial Order shows that evidence

25  related to Plaintiff's deliberate indifference claims will include testimony from ten

26  Defendants, exhibits related to Plaintiff's medical record, and at least one medical expert;

27  while evidence related to Plaintiff's retaliation claim is more limited. (Doc. 187 at 4-9.) At

28  a January 11, 2011 status conference, the parties in this case estimated needing at least twelve

1 full trial days.

2      On January 10, 2011, Defendants filed a Notice of Motion and Motion to Sever
3 Claims (Doc. 200), accompanied by a Memorandum of Points and Authorities in Support of
4 Motion to Sever Claims and Bifurcate Damages (Doc. 200-1). First, Defendants argue for
5 severance of Plaintiff's retaliation claim from his deliberate indifference claims on grounds
6 that the claims do not share common questions of fact or law or arise out of the same
7 transaction. (Doc. 200-1 at 1.) Defendants also state that the claims are against different
8 Defendants who worked at separate prisons. (Doc. 200-1 at 1.) Second, Defendants argue
9 that because Plaintiff is an inmate bringing claims against Defendants employed by CDCR,
10 the Court should bifurcate the punitive damages issue. (Doc. 200-1 at 1, 7.)

11      Plaintiff filed his Opposition to Motion to Sever Cases on February 11, 2011 (Doc.
12 202). First, Plaintiff contends that the Court should deny Defendants' request for severance
13 on grounds that Defendants were properly joined and that judicial economy and fairness
14 favor one trial for Plaintiff's claims. (Doc. 202 at 1, 4, 7.) Second, Plaintiff states that he does
15 not oppose Defendants' request to bifurcate punitive damages issues. (Doc. 202 at 9.)

16                              **STANDARD OF REVIEW**

17      Federal Rule of Civil Procedure 20 permits a plaintiff to join multiple defendants if
18 a claim is asserted "arising out of the same transaction or occurrence" and if "any question
19 of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).
20 "Rule 20 is designed to promote judicial economy, and reduce inconvenience, delay, and
21 added expense." Coughlin v. Rogers, 130 F.3d 1348, 1351 (9th Cir. 1997). The Ninth Circuit
22 has held that Rule 20 "is to be construed liberally in order to promote trial convenience and
23 to expedite final determination of disputes, thereby preventing multiple lawsuits." League
24 to Save Lake Tahoe v. Tahoe Reg'l Planning Agency, 558 F.2d 914, 917 (9th Cir. 1977); see
25 also United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 724 (1966) ("Under the Rules, the
26 impulse is toward entertaining the broadest possible scope of action consistent with fairness
27 to the parties; joinder of claims, parties and remedies is strongly encouraged.") The interests
28 of Rule 20 are not served if "[e]ach claim raises potentially different issues, and must be

1   viewed in a separate and individual light by the Court." <u>Coughlin</u>, 130 F.3d at 1351.

2          In contrast to joinder, "[t]wo types of severances or separations of claims are

3   contemplated by the Federal Rules of Civil Procedure-one within the action itself, the other

4   resulting in a second, or new action." <u>Acevedo-Garcia v. Monroig</u>, 351 F.3d 547, 558 (1st

5   Cir. 2003) (quoting <u>Official Comm. Unsecured Creditors v. Shapiro</u>, 190 F.R.D. 352, 354

6   (E.D. Pa. 2000)). First, Federal Rule of Civil Procedure 42(b) allows a court to issue "[a]n

7   order for a separate trial [which] keeps the lawsuit intact while enabling the court to hear and

8   decide one or more issues without trying all of the controverted issues at the same hearing."

9   88 C.J.S. <u>Trial</u> § 17; <u>see also</u> 9 Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and</u>

10  <u>Procedure</u> § 2387. A court has discretion to issue separate trials under Rule 42(b) "[f]or

11  convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b); <u>Tuey</u>

12  <u>v. Mammoth Mountain Ski Area</u>, 2009 WL 928328, at * 4 (E.D. Cal. April 6, 2009) (citing

13  <u>Green v. Baca</u>, 226 F.R.D. 624, 630 (C.D. Cal. 2005) ("The issue of whether to bifurcate is

14  guided by consideration of several factors: (1) whether separation of the issues for trial will

15  expedite disposition of the action; (2) whether such separation will conserve trial time and

16  other judicial resources; (3) whether such separation will avoid prejudice; and (4) whether

17  the issues are essentially independent of each other so that there will be no need to duplicate

18  the presentation of significant areas of the evidence in the separated proceedings.") When

19  ordering a separate trial, the court must preserve any federal right to a jury trial." Fed. R. Civ.

20  P. 42(b). Second, Federal Rules of Civil Procedure 20 and 21(b) allows a court to find that

21  a case should be "divided into two or more separate and independent or distinct causes." 88

22  C.J.S. <u>Trial</u> § 17 (2010). The purpose of severance under Rules 20 and 21 is to avoid

23  prejudice to a party. <u>See</u> <u>Coleman v. Quaker Oats Co.</u>, 232 F.3d 1271, 1296 (9th Cir. 2000).

24

25

26

27

28

**DISCUSSION**

**I.   Severance**

**A.   Whether Plaintiff Meets the Permissive Joinder Requirements**

Defendants claim that Plaintiff cannot meet the requirements for permissive joinder because Plaintiff's retaliation claim and deliberate indifference claims do not "aris[e] out of the same transaction or occurrence" or have "any question of law or fact common to all defendants." (Doc. 200-1 at 4-6 (citing Fed. R. Civ. P. 20(a)(2)).) Defendants contend that Plaintiff's claims address distinct factual and legal theories and that "[t]he circumstances out of which Plaintiff's [] claims arose against the Defendants in this case are vastly different in essential respects," including Defendants' job descriptions, and the time period and locations in which the alleged conduct occurred. (Doc. 200-1 at 4-5 (citing Saval v. BL Ltd., 710 F.2d 1027, 1031-32 (4th Cir. 1983); Harris v. Spellman, 150 F.R.D. 130 (N.D. Ill. 1993)).) Plaintiff contends that the retaliation claim is logically and factually related to the deliberate indifference claim because Plaintiff's injuries "were caused or exacerbated by the fact that he was wrongfully confined in SHU, and he was confined in SHU because Defendant Dangler had him put there." (Doc. 202 at 5-6.)

The Court finds that the Plaintiff has met the requirements for permissive joinder. Plaintiff's retaliation claim and deliberate indifference claims form a single "transaction" and have a factual causal connection, as Plaintiff contends that his confinement in SHU as a result of Dangler's alleged retaliation is what led to the alleged deliberate indifference to his medical needs. (Doc. 202 at 5-6.) The cases that Defendants cite in support of its severance argument lack such an alleged causal connection. (Doc. 202 at 6. (citing Saval, 710 F.2d at 1031-32 (joinder of four plaintiffs' warranty breach allegations relating to same defective car and engine improper because different defects and service histories); Harris v. Spellman, 150 F.R.D. 130 (N.D. Ill. 1993) (joinder of two inmates' claims challenging disciplinary proceedings improper because facts and circumstances related to hearings differed). Further, this case has been pending for more than four years, and the Court fails to see how the Rule 20 aim of "expedit[ing] final determination of disputes, thereby preventing multiple lawsuits"

1   would be served if this case was severed now. <u>League to Save Lake Tahoe</u>, 558 F.2d at 917.

2   **B.     Whether Fairness or Judicial Economy Favor Severance or Separate Trials**

3       Defendants argue that even if Plaintiff has met the requirements for permissive

4   joinder, the Court should sever the retaliation and deliberate indifference claims under either

5   Rule 20 or Rule 42 "because the potential confusion to the jury and prejudice to Defendants[]

6   offsets any possible benefits of a joint trial. (Doc. 200-1 at 5-6.) Defendants contend that a

7   joint trial on all cases would "require a jury to keep separate the two different claims that

8   occurred at two different institutions" and cause the retaliation claim to "be colored by

9   evidence concerning the unrelated claim of deliberate indifference . . . and vice versa." (Doc.

10  200-1 at 5-6.) Plaintiff contends that the principles of "fairness and judicial economy" favor

11  a single trial on grounds that the three claims Plaintiff alleges are unlikely to confuse a jury.

12  (Doc. 202 at 7.) Plaintiff further asserts that the retaliation claim and deliberate indifference

13  claims are related, and thus should be adjudicated together. (Doc. 202 at 9.)

14      The Court finds that although severance of Plaintiff's claims is inappropriate,

15  bifurcation of the retaliation and deliberate indifference claims will aid the interests of

16  judicial economy. Fed. R. Civ. P. 42. At this late stage in the litigation, after discovery is

17  nearly completed and the Court has issued its Pretrial Order (Doc. 198), it would not serve

18  the interests of judicial economy or fairness to sever the claims in this case under Rule 20.

19  However, the Court will exercise its discretion under Rule 42(b) to order separate trials. Fed.

20  R. Civ. P. 42(b). First, the bifurcation of Plaintiff's claims into separate trials will "expedite"

21  its disposition. Fed. R. Civ. P. 42(b). Litigation of the deliberate indifference claims is likely

22  to take more time at trial than the retaliation claim. <u>See</u> (Doc. 187 at 4-9.) Because the Court

23  must balance its caseload in the District of Arizona with this case in the Eastern District of

24  California, it would be hard-pressed in 2011 to find the nearly three weeks necessary for one

25  trial on all of Plaintiff's claims. However, because the Court can likely schedule two shorter

26  trials in this matter for 2011, the aims of Rule 42 will be well-served by bifurcating this

27  matter. Fed. R. Civ. P. 42. Second, although the retaliation and deliberate indifference claims

28  are related, they are not so extrinsically linked that holding separate trials on these claims

1    would prejudice Plaintiff or create excessive duplication of evidence. Separating the

2    retaliation claim from the deliberate indifference claims under Rule 42(b) allows the Court

3    to "keep[] the lawsuit intact while enabling the court to hear and decide one or more issues

4    without trying all of the controverted issues at the same hearing." 88 C.J.S. Trial § 17; see

5    also 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2387.

6    **II.    Bifurcation of Punitive Damages**

7         Defendants further request that the Court exercise its discretion under Rule 42(b) to

8    separately try Plaintiff's punitive damages claims. (Doc. 200-1 at 7.) Defendants argue that

9    bifurcation will "expedite and economize" this case, because if Defendants prevail, no

10   punitive damages trial will be needed, while if Plaintiff prevails, a settlement could occur.

11   (Doc. 200-1 at 7 (quoting Fed. R. Civ. P. 42(b)).) Defendants also argue that allowing

12   Plaintiff, a prisoner, access to Defendants' personal and confidential information prior to a

13   determination of liability could "undermine their ability to effectively operate." (Doc. 200-1

14   at 7.) Plaintiff states that he is not opposed to bifurcation of the punitive damages claim.

15   (Doc. 202 at 9.) Because Plaintiff does not oppose Defendants' request to bifurcate the

16   liability and punitive damages stages of this proceedings, and because bifurcation may

17   expedite the matter by creating the possibility of settlement, the Court will grant Defendants'

18   request.

19                                   **CONCLUSION**

20        **IT IS HEREBY ORDERED GRANTING** Defendants' Motion to Sever Claims &

21   Bifurcate Damages only to the extent that:

22        1.    This case will be bifurcated into two separate jury trials, with the first trial

23              addressing Plaintiff's Retaliation Claim (Claim II), and the second trial

24              addressing Plaintiff's Deliberate Indifference Claims (Claims IV and V).

25        2.    The Court will bifurcate the liability and punitive damages stages of this case.

26        **IT IS FURTHER ORDERED** that the Court will set firm trial dates at a telephonic

27   status hearing before the Honorable Stephen M. McNamee on **Tuesday, March 8, 2011 at**

28   **1:30 p.m. Arizona time**. Plaintiff's counsel shall initiate a conference call and secure all

1  participants on the line before telephoning Judge McNamee's chambers at (602) 322-7555,
2  no later than 1:25 p.m. Arizona time, on March 8, 2011.
3        DATED this 23rd day of February, 2011.

Stephen M. McNamee
United States District Judge