IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Davon E. McCoy,<br><br>    Plaintiff,<br><br>vs.<br><br>R. Spidle, et al.,<br><br>    Defendants. | No. CV-07-198-SMM<br><br>**ORDER** |

Before the Court is Defendants' Motion in Limine Regarding Retaliation Damages (Doc. 212). Plaintiff has filed his Opposition (Doc. 215). After considering the arguments advanced by the parties, the Court makes the following rulings.[1]

**BACKGROUND**

On February 6, 2007, Plaintiff, who is currently confined at Salinas Valley State Prison, brought this 42 U.S.C. § 1983 action against Defendants employed by the California Department of Corrections and Rehabilitation (the "CDCR"). (Doc. 1.) As Defendants prevailed in part on a motion for summary judgment (Doc. 123 at 16), three claims remain: Plaintiff's retaliation claim (Claim II) against Defendant M. Dangler ("Dangler") and Plaintiff's deliberate indifference claims (Claims IV and V) against numerous Defendants. (Doc. 1 at 11-12, 14-19.)

On February 23, 2011, the Court bifurcated the case into two separate jury trials, with

---

[1] Neither Defendants in their Motion in Limine Regarding Retaliation Damages (Doc. 212) nor Plaintiff in his Opposition (Doc. 215) requested oral argument. The Court therefore finds the action suitable for decision without oral argument. See LRCiv 230(g).

the first trial addressing Plaintiff's retaliation claim and the second trial addressing Plaintiff's deliberate indifference claims. (Doc. 203 at 8.) The Court also granted Defendants' request to bifurcate the liability and punitive damages stages of the case. (Doc. 203 at 8.) The Court has scheduled a jury trial on Plaintiff's retaliation claim for May 9, 2011 through May 13, 2011 in the Sacramento Division of the Eastern District of California. (Doc. 205.)

Plaintiff's retaliation claim alleges that Dangler, an Inmate Appeals Coordinator, retaliated against Plaintiff for exercising his constitutional right to administratively appeal a disciplinary proceeding. (Doc. 1.) While a prisoner at High Desert State Prison, Plaintiff received a Rule Violation Report ("RVR") resulting in a disciplinary proceeding on June 15, 2005, in which Plaintiff was found to have conspired to murder correctional officers. (Doc. 123 at 3.) At the conclusion of that disciplinary proceeding, Plaintiff was assessed 48 months at the Secured Housing Unit ("SHU") at California State Prison, Corcoran ("Corcoran"). (Doc. 123 at 3.) On July 17, 2005, Plaintiff submitted an initial grievance appealing that disposition. (Doc. 1 ¶ 36; Doc. 123 at 3.) Plaintiff was transferred to the SHU facility at Corcoran on August 30, 2005. (Doc. 212 at 2.)

On September 6, 2005, Plaintiff filed a grievance against Dangler for improperly screening and delaying processing of his initial grievance. (Doc. 1 ¶ 37; Doc. 123 at 3.) Plaintiff alleges that this grievance against Dangler led to an Internal Affairs Directive. (Doc. 1 ¶ 37; Doc. 123 at 3.) On January 25, 2006, the initial grievance related to the RVR was granted, after a review found that although Plaintiff may have known of a conspiracy to attack police officers, the evidence failed to support that he was an "active conspirator." (Doc. 142 at 6.) Dangler signed the decision granting Plaintiff's initial grievance. (Doc. 123 at 15, Doc. 142 at 7.) After Plaintiff's initial grievance was granted, the disciplinary proceeding was dismissed, the 48 months in SHU was suspended, and Plaintiff was returned to general population. (Doc. 1 ¶¶ 38-39; Doc. 123 at 3.) The RVRs issued to each of Plaintiff's alleged co-conspirators were also dismissed. (Doc. 212 at 8-9; Doc. 215 at 8-10.)

Plaintiff alleges that in retaliation for Plaintiff's grievance filed against Dangler for mishandling Plaintiff's initial grievance, Dangler "reassessed" Plaintiff's assignment by

- 2 -

sending a memorandum on April 27, 2006, resulting in Plaintiff's return to SHU. (Doc. 1 ¶ 40; Doc. 123 at 3.) Plaintiff also alleges that Dangler altered the form that Dangler had earlier signed, replacing the word "granted" with "denied." (Doc. 142 at 7.) Dangler contends that he was unaware of Plaintiff's grievance against him at that time. (Doc. 100 at 23.) Dangler further asserts that the decision to return Plaintiff to SHU was supported by legitimate penological grounds–confidential memoranda allegedly indicated that Plaintiff indeed had conspired to murder correctional officers–and was affirmed by the Institutional Classification Committee. (Doc. 100 at 22-23; Doc. 123 at 3.)

Plaintiff suffers from a seizure disorder, which requires close observation and routine seizure medication. (Doc. 142 at 10.) While at SHU, Plaintiff allegedly complained to a nurse on June 5, 2006 that he was having a seizure and requested hospitalization. (Doc. 142 at 10.) The nurse allegedly advised that Plaintiff was to be watched and referred to the yard nurse in the morning. (Doc. 142 at 10.) Plaintiff alleges that prison officials ignored his and other inmates' subsequent pleas for medical assistance, and that Plaintiff had a seizure, allegedly suffering serious injuries including "a dislocated shoulder, lacerations, bruises, cranial injury, and extreme pain." (Doc. 1 ¶¶ 48-54; Doc. 142 at 10.) It is undisputed that Plaintiff had a seizure, fell, and dislocated his shoulder. (Doc. 142 at 10.)

On March 25, 2011, Defendants filed the pending Motion in Limine Regarding Retaliation Damages (Doc. 212). Defendants contend that the Court should bar Plaintiff, during the trial on his retaliation claim, from presenting evidence of: (1) actual injury; (2) events occurring while Plaintiff was housed at SHU; and (3) the dismissal of his alleged co-conspirators' RVRs. (Doc. 212.) On April 8, 2011, Plaintiff filed his opposition, asserting that the Court should deny Defendants' Motion in Limine because: (1) it is devoid of evidentiary support; (2) Plaintiff is entitled to compensatory damages from Dangler for harm occurring at SHU that was proximately caused by the retaliation; and (3) the dismissed RVRs are admissible as evidence of Dangler's alleged retaliatory motive. (Doc. 215.)

**DISCUSSION**

**I.      Legal Standard for Retaliation**

In the prison context, a claim of First Amendment retaliation under § 1983 requires: "(1) An assertion that a state actor took some adverse action against an inmate; (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005); see also Hines v. Gomez, 108 F.3d 265, 267 (9th Cir. 1997) (retaliation claims require an inmate to show that (1) the prison official acted in retaliation for the exercise of a constitutionally-protected right and (2) the action "advanced no legitimate penological interest."). The prisoner has the burden of proving that "'the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals.'" Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995) (quoting Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985)).

**II.     Damages**

Defendants contend that Plaintiff's recovery on the retaliation claim is limited to nominal damages. (Doc. 212 at 4.) Plaintiff asserts that he is also entitled to compensatory damages. (Doc. 215 at 2.) A §1983 damages award is intended "to compensate persons for injuries caused by the deprivation of constitutional rights." Carey v. Piphus, 435 U.S. 247, 254 (1978). Although 42 U.S.C. § 1997e(e) of the Prison Litigation Reform Act of 1996 typically requires that an inmate suffer a physical injury before damages can be awarded for mental or emotional injury, the Ninth Circuit has held that this requirement does not apply to First Amendment claims. Canell v. Lightner, 143 F.3d 1210, 1213 (9th Cir. 1998) ("The deprivation of First Amendment rights entitles a plaintiff to judicial relief wholly aside from any physical injury he can show, or any mental or emotional injury he may have incurred. Therefore, § 1997e(e) does not apply to First Amendment Claims regardless of the form of relief sought."). Further, § 1997e(e) permits a plaintiff's claim for nominal, compensatory, or punitive damages if it does not allege mental or emotional injuries. Oliver v. Kelly, 289

- 4 -

F.3d 623, 627-28 (9th Cir. 2002). However, "damages based on the abstract 'value' or 'importance' of constitutional rights are not a permissible element of compensatory damages." Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 310-11 (1986).

The Court will permit Plaintiff, during trial on his retaliation claim, to present limited argument and evidence in support of compensatory damages. The Ninth Circuit has held that the limitations imposed by § 1997e(e) do not apply to First Amendment causes of action such as Plaintiff's retaliation claim. See Canell, 143 F.3d at 1213 . Even if § 1997e(e) applied to Plaintiff's retaliation claim, Plaintiff could still seek compensatory damages because: (1) Plaintiff was allegedly physically injured as a result of his retaliatory placement in SHU, and (2) § 1997e(e) permits compensatory damages not predicated on alleged mental or emotional injuries. Oliver, 289 F.3d at 627-28. The Court must necessarily defer making precise findings on the permissible scope of Plaintiff's damages evidence until such evidence is introduced at trial, but will discuss generally admissible topics in Section III of this Order.

### III.     Evidence of Conditions and Events at SHU and Plaintiff's Alleged Injuries

Defendants contend that evidence of conditions and events at SHU is irrelevant and prejudicial, while Plaintiff asserts that such evidence is both relevant and probative. (Doc. 212 at 6-7; Doc. 215 at 6-8.) Defendants further argue that Plaintiff should be barred from offering evidence on his alleged physical injuries sustained at SHU because Dangler was not ultimately responsible for Plaintiff's placement at SHU, Dangler could not have anticipated Plaintiff's seizure or the alleged deliberate indifference that exacerbated Plaintiff's injuries, and such evidence could allow Plaintiff to recover twice for his injuries. (Doc. 212 at 5-7.) Plaintiff contends that the injuries evidence is admissible because Dangler's retaliatory conduct caused Plaintiff's reassignment to SHU, where alleged isolated conditions prevented Plaintiff from receiving treatment for his injuries. (Doc. 215 at 5-6.) Plaintiff further asserts that any risk of double recovery can be cured by the Court. (Doc. 215 at 6.)

Witnesses may only testify about relevant evidence, which is evidence tending to prove or disprove a party's liability theory. Fed. R. Evid. 401-402. Even if evidence is relevant, it "may be excluded if its probative value is substantially outweighed by the danger

of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. In this case, the Court will permit limited evidence of conditions and events at SHU and of Plaintiff's injuries during trial on the retaliation claim because such evidence is both relevant and more probative than prejudicial. Fed. R. Evid. 401-403. Evidence of restrictive conditions at SHU could make it more likely that Dangler had a retaliatory motive in allegedly reassigning Plaintiff to that facility. Further, Dangler's allegedly retaliatory reassignment of Plaintiff to SHU may have contributed to the alleged delayed treatment of his seizure, making the extent of Plaintiff's injuries relevant to Plaintiff's potential damages. However, if Plaintiff recovers damages related to his physical injuries sustained while at SHU, Plaintiff will not be permitted to recover duplicative damages during his trial on his deliberate indifference claims. Further, the Court finds that the conditions and events at SHU and Plaintiff's injuries are not central to Plaintiff's retaliation claim, and therefore such evidence will consume a limited amount of time at trial. To prevent these issues from consuming excessive trial time, the parties are encouraged to stipulate to undisputed facts, including the relevant conditions and events at SHU and any undisputed facts about Plaintiff's seizure and injuries.

**IV.     Evidence of Dismissal of Co-Conspirators' RVRs**

Defendants assert that evidence of the dismissals of RVRs issued to Plaintiff's alleged co-conspirators (the "dismissal evidence") is irrelevant and lacks probative value. (Doc. 212 at 8-9.) Defendants further argue for exclusion because Plaintiff, purportedly having failed to designate a witness with personal knowledge of the dismissal evidence, would need to rely on inadmissible hearsay. (Doc. 212 at 8.) A witness may only testify about matters within his or her personal knowledge. Fed. R. Evid. 602. As noted above, witnesses may only testify about relevant evidence, and even relevant evidence may be excluded if prejudicial, confusing, misleading, or cumulative. Fed. R. Evid. 401-403. Witnesses generally cannot testify about out-of-court statements introduced for the truth of the matter asserted, but an exception to this general hearsay rule permits the admission of business records and public

- 6 -

records and reports. Fed. R. Evid. 802, 803(6), (8). Plaintiff asserts that he has designated at least two witnesses–Dangler and the custodian of records for the CDCR–with personal knowledge of the dismissal evidence, and states that the custodian of records is competent to introduce and authenticate the dismissal evidence as business or public records. (Doc. 215 at 9.)

The Court finds that the dismissal evidence is both relevant and probative because it tends to make it less likely that Plaintiff conspired to murder peace officers. See Fed. R. Evid. 401-403. Because the dismissal evidence makes it less probable that Plaintiff was engaged in a conspiracy, such evidence also makes it less probable that Dangler sought to return Plaintiff to SHU based upon legitimate penological grounds related to that conspiracy. See Fed. R. Evid. 401-403. The Court also finds, assuming Plaintiff's representations about its designated witnesses are accurate, that Plaintiff would be able to introduce the evidence while complying with the Federal Rules of Evidence. Fed. R. Evid. 401-03; 803. Therefore, the Court will not exclude the dismissal evidence as this time.

## CONCLUSION

**IT IS HEREBY ORDERED DENYING** Defendants' Motion in Limine Regarding Retaliation Damages (Doc. 212).

**IT IS FURTHER ORDERED** setting a status hearing before the Honorable Stephen M. McNamee on **Tuesday, May 3, 2011 at 1:30 p.m. Arizona time**. Plaintiff's counsel shall initiate a conference call and secure all participants on the line before telephoning Judge McNamee's chambers at (602) 322-7555, no later than 1:25 p.m. Arizona time, on May 3, 2011.

DATED this 18th day of April, 2011.

_____
Stephen M. McNamee
United States District Judge